UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK WENZLICK,

    Plaintiff,                                  Civil Action No. 08-12414

v.                                          HON. PAUL D. BORMAN
                                            U.S. District Judge
                                            HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Patrick Wenzlick brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability insurance benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED, and Plaintiff's Motion for Summary Judgment GRANTED to the extent that the case is remanded to the administrative level for determination of whether Plaintiff is entitled to a closed period of benefits.

**PROCEDURAL HISTORY**

On March 21, 2005, Plaintiff filed an application for Disability Insurance Benefits

("DIB"), alleging an onset of disability date of February 15, 2003 (Tr. 37-39). After the claim's initial denial on June 23, 2005 (Tr. 32), Plaintiff requested an administrative hearing, held on November 9, 2007 in Flint, Michigan before Administrative Law Judge ("ALJ") Peter N. Dowd (Tr. 269). Plaintiff, represented by Craig Zanot, testified, as did Vocational Expert ("VE") Pauline McEachin (Tr. 274-297, 297-305). On November 27, 2007, ALJ Dowd determined that Plaintiff was not disabled based on his ability to perform his past relevant work (Tr. 19-20). On April 10, 2008, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review on June 6, 2008.

## **BACKGROUND FACTS**

Plaintiff, born September 25, 1954, was age 53 when the ALJ issued his decision (Tr. 21). He completed high school, working previously as an automotive assembler, tapper operator, job setter and office manager salesperson (Tr. 77, 98). Plaintiff alleges disability as a result of fused wrist, arthritis of the hip, carpal tunnel syndrome ("CTS") and the partial amputation of his right thumb (Tr. 97).

### A.     **Plaintiff's Testimony**

Plaintiff, 53, testified that lived in a single family home in Tawas City, Michigan (Tr. 274). Plaintiff, right-handed, reported that he held a valid driver's license and continued to drive on a regular basis (Tr. 276). A former employee of Delphi, Plaintiff indicated that although he alleged disability as of February 15, 2003, he had returned to Delphi between February and July, 2004, performing "make-work" tasks (Tr. 277). He reported that he was currently receiving a disability retirement pension, adding that his Workers' Compensation

claim had recently settled a for approximately $11,000 (Tr. 278).

Plaintiff testified that his past work with Delphi included air filter line production, job setting and tapper operating (Tr. 279, 282). He estimated that the job setting position required him to lift a maximum of 20 pounds (Tr. 282). He also indicated that he had worked for his brother's company between 1995 and 1998 supervising office staff and selling patio equipment, replacement windows, and storm doors (Tr. 279-280). In response to the ALJ's comment that the office and sales work had not been listed in the DIB application, Plaintiff testified that because the position was "spotty," he had forgotten to include it (Tr. 281).

Plaintiff denied alcohol and drug abuse, further denying "past or present troubles with the law" (Tr. 282). He testified that he had experienced the amputation of the tip of his thumb sometime in the 1990s, noting that he first experienced CTS in 2001 (Tr. 283). On a scale of one to ten, Plaintiff characterized his pain level as a result of CTS as a "six" (Tr. 284). Plaintiff noted that he also underwent wrist fusion surgery in 1983 after sustaining a wrist trauma (Tr. 283). He testified that he continued to experience right hip pain, despite hip replacement surgery in March, 2006 (Tr. 284). Plaintiff reported that one of his treating physicians deemed his left hand problems as irreparable (Tr. 285). Plaintiff denied taking medication for any of his conditions (Tr. 285).

Plaintiff reported arising between 7:00 and 8:00 a.m. and retiring between 10:00 and 10:30 p.m. (Tr. 285). He indicated that he shopped regularly, handled his own finances, performed household and outdoor chores, and prepared meals occasionally (Tr. 286). Plaintiff reported that he had flown to Florida the previous winter for the purpose of taking

his mother back to Michigan (Tr. 287). He reported good relations with family, friends and neighbors, noting that he watched television, read, cared for his dog, went to church occasionally, and performed minor home repairs (Tr. 288-290). He reported that he had not hunted or fished since becoming disabled (Tr. 290).

Plaintiff opined that he was unable to perform either his industrial jobs or sales work, noting that the sales job required extensive driving and ladder-climbing (Tr. 292). Plaintiff alleged that symptoms of CTS prevented him from driving for more than 20 minutes at a stretch (Tr. 293-294). He reported that hand numbness resulting from CTS disrupted his sleep, stating that although he did not take medication, he obtained partial relief by using a topical cream and soaking his hands (Tr. 295). He testified that he had "very little" left wrist flexibility as a result of the fusion (Tr. 296).

### B. Medical Evidence

#### 1. Treating Sources

##### a). Material Submitted Prior to the November 27, 2007 Administrative Decision

In July, 2000, orthopedic surgeon Norman E. Walter, M.D., noting that Perthes disease created "bone-on-bone contact in the right hip," opined that Plaintiff "eventually . . . will need a hip replacement" (Tr. 81-82). Plaintiff refused Dr. Walter's offer to recommend a "sick leave" (Tr. 82). In July, 2002, Sidney Martin, M.D. remarked that imaging studies of the left wrist showed "significant degenerative changes associated with "proximal row carpectomy" (Tr. 80). Dr. Martin, issuing work restrictions, recommended wrist fusion surgery (Tr. 80). A September, 2003 EMG showed bilateral CTS, greater on the

left, and "left dorsal ulnar neuropathy" (Tr. 95). Dr. Gavin Awerbuch, M.D., noting wrist limitations, observed that Plaintiff also walked with a slight limp due to right hip arthritis (Tr. 93). In April, 2003, Thomas H. Beird, M.D. observed that Plaintiff's left wrist was "obviously swollen" (Tr. 140). In July, 2004, Dr. Awerbuch noted that Plaintiff's current work attempt created wrist pain, atrophy of the hand muscles, and possible nerve damage, observing "pain with movement of [the] right hip," positive Tinel's sign at the wrist, and "minimal" left wrist movement with an "extremely painful ROM" (Tr. 86). In November, 2004, Dr. Awerbuch noted that in addition to hand and wrist problems, Plaintiff continued to experience "severe arthritis in his right hip," rendering him "quite limited in his abilities to function at home" (Tr. 85). In April, 2005, Plaintiff reported sleep disturbances as a result of wrist pain and numbness (Tr. 114). An EMG showed "mild right" CTS (Tr. 117). Dr. Harry S. Greenberg, M.D., noting a lack of denervation, advised against carpal tunnel release, but recommended possible steroid injections (Tr. 144-145). In July, 2005, Dr. Awerbuch, noting a diagnosis of right hip arthritis and Perthes disease, observed "incomplete motion of the right hip" (Tr. 139). In November, 2005, Dr. Awerbuch, also noting a lack of nervation but pain and numbness of the left wrist, recommended a carpal tunnel brace and B complex vitamins (Tr. 138). Dr. Awerbuch noted that Plaintiff exhibited "ongoing right [hip] pain and trouble standing and walking," requiring him to frequently [recline] or change positions" (Tr. 137). In February, 2006, James R. Weir, M.D. observed that Plaintiff's right leg was three-quarters of an inch longer than the left with a "marked decreased range of motion to his right hip and a great deal of pain" (Tr. 130). The following month, Plaintiff

underwent a right hip replacement, performed without complications (Tr. 148-149). In April, 2006, Dr. Weir, recommending therapy, noted that Plaintiff "hip range of motion [was] coming along very nicely" (Tr. 128). The following month, Dr. Weir noted that Plaintiff's hip ROM was "excellent" (Tr. 147). The same month, Dr. Awerbuch observed that Plaintiff's reliance on crutches following hip surgery had created wrist and hand pain, numbness, and swelling (Tr. 136). In August, 2006, Dr. Awerbuch noted that while Plaintiff could "stand without a cane," he had "a slight limp" (Tr. 135). In October, 2007, Dr. Awerbuch opined that Plaintiff's prognosis was "poor," noting reduced grip strength, osteoarthritis, and sensory loss (Tr. 132).

### b). Material Submitted After the November 27, 2007 Administrative Decision

March, 2006 medical records from Covenant Health Care detail Plaintiff's right total hip arthroplasty and three-day inpatient hospitalization[1] (Tr. 150-268).

---

[1] Transcript pages 150-268 were submitted after administrative decision was issued. Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96.

Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g). The fact that Plaintiff has not requested a Sentence Six remand does not prevent the Court from granting such relief *sua sponte*. *Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640 (E.D.Mich.2005).

**2. Consultive and Non-treating Sources**

A June, 2005 Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and sit, stand, or walk for about six hours in an eight-hour workday with a *limited* ability to push and pull in both the upper and lower extremities (Tr. 101). The Assessment limited Plaintiff to occasional climbing, stooping, kneeling, crouching, and crawling, and frequent (as opposed to *constant*) balancing (Tr. 102). Plaintiff's manipulative limitations consisted of *frequent* handling, fingering, and feeling (Tr. 103). The Assessment found the absence of visual and communicative limitation, but found that Plaintiff should avoid extended exposure to vibration and heights (Tr. 104). The reviewing physician, John R. Bartone, M.D., concluded that Plaintiff's allegations of limitation were only partially credible (Tr. 97).

**C.     Vocational Expert Testimony**

VE Pauline McEachin classified Plaintiff's former work as a tapper operator as unskilled at the medium exertional level; job setter and assembly line air filter line worker as light, unskilled; and work as an office manager/salesperson as light and unskilled or semiskilled [2] (Tr. 77, 299-300). The VE testified that Plaintiff retained the transferrable

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

skills of supervising, record keeping, and sales measuring as a result of the office position (Tr. 300). The ALJ posed the following question to the VE, taking into account Plaintiff's age, education, and past work experience:

> "That the individual can maximally lift weights of 20 pounds, that the individual can repetitively lift weights of 10 pounds or less, that the individual can stand and walk six of eight hours and sit six of eight hours in a normal eight-hour workday but would need the ability to alternate between sitting and standing. That the individual also could only occasionally use both the upper and lower extremities for pushing and pulling, that the individual could only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. That the individual must avoid concentrated exposure to machinery vibrations and is limited in both hands in terms of handling, fingering, and feeling so that they couldn't do such tasks constantly but could do them from occasionally to frequently and that the individual would need to avoid concentrated exposures to heights, could such an individual perform [Plaintiff's] past relevant work?"

(Tr. 301). The VE replied that given the above limitations, Plaintiff could perform his past relevant work as an office manager or salesperson, noting that 65,000 exertionally light, semiskilled and 6,000 exertionally light, *unskilled* retail sales positions existed in the State of Michigan (Tr. 301). In response to questioning by Plaintiff's attorney, the VE testified that such positions typically required occasional writing or data input (Tr. 301-302). The VE testified that if Plaintiff were unable to use his hands for writing or data input more than occasionally, he would be unable to perform either of the above-described positions (Tr. 303). She concluded by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 305).

### D.     The ALJ's Decision

ALJ Dowd determined that Plaintiff experienced the severe impairments of "bilateral

carpal tunnel syndrome with history of left wrist fusion and with limited range of motion of the wrist; s/p total right hip replacement of March 3, 2006; and s/p amputation of the very tip of the right thumb in the 1990s" (Tr. 16). However, the ALJ found that the conditions did not meet or medically equal one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 16). The ALJ found that Plaintiff retained the Residual Functional Capacity:

> "to perform a range of light exertional work activities which allow for alternate sitting and standing. The claimant in any potential work setting can only do occasional climbing of stairs, balancing, stooping, kneeling, crouching and crawling. He can only push and pull occasionally with the upper extremities, and he is limited in handling, fingering and feeling with the hands. he must in any potential work setting avoid concentrated exposure to machinery vibrations and hazards such as unprotected heights."

(Tr. 16). Adopting the VE's findings, the ALJ found that Plaintiff was capable of performing his past relevant work as an "office manager/salesperson" (Tr. 19).

The ALJ found Plaintiff's allegations of disability "not entirely credible" (Tr. 19). In support of his credibility determination, the ALJ noted that objective medical testing showed that Plaintiff's hand and wrist condition was stable (Tr. 19). The ALJ also found that Plaintiff's claims were undermined by the fact that he continued to perform household and yard work, care for his dog, read, and socialize with friends and family members (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Past Relevant Work

Plaintiff disputes the ALJ's finding that his sales/office management work for his brother's patio and awning company amounted to "past relevant work" pursuant to 20 C.F.R. 404.1565, 404.1571; SSR 82-62. *Plaintiff's Brief* at 8, *Docket #7*. Arguing that his work for his brother's company was sporadic at best, he contends that the undisputed fact that he worked continually from 1990 through 1998 "as an assembler and tapper operator" and from 1999 to 2003 as a job setter stands at odds with the ALJ's conclusion that the work as a salesperson or office manager was significant enough to be "past relevant work." *Id.* at 6-8.

At Step Four, the Commissioner considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. SSR 82-61. If so, the claimant is not disabled. If not, the Commission considers whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.* Thus, if a claimant

has the RFC to work at his or her past job as actually performed, even if that particular job is less demanding than the work as generally performed, or even if it involves fewer hours or greater opportunity for rest, he or she will be found not disabled at step four. *Stephens v. Shalala,* 50 F.3d 538, 542 (8th Cir. 1995).[3]  Under SSR 82-62, a three-prong test must be met in order to find that a claimant can return to his past relevant work "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job."

Plaintiff's argument that his part-time work as a salesperson and office manager did not constitute "past relevant work" is defeated by the unambiguous language of the SSR 96-8p:

> "[t]he ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled."

---

[3] SSR 82-61 cites another possible test, "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job" *Brooks v. Sullivan,* 766 F.Supp. 584, 591 (N.D.Ill.,1991); SSR 82-61. However, SSR 82-61 goes on to caution against the dangers of using such a generalized test. "Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." *Pinto v. Massanari,* 249 F.3d 840, 846 (9th Cir. 2001). The court in *Steward v. Bowen,* 858 F.2d 1295, 1300 (7th Cir.1988) also rejected the application of a "broad generic, occupational classification" in making a Step four determination: "SSR 82-61 clearly refers to *particular* past occupations, not general classifications."

However, I agree with Plaintiff's contention that record evidence supports the conclusion that Plaintiff was unable to perform any work for at least a 12-month period since the alleged onset date of February 15, 2003. While substantial evidence arguably supports the ALJ's finding that Plaintiff could perform exertionally light work at the time of the administrative hearing in November, 2007, the record strongly suggests that in the months before and after his March, 2006 hip surgery, Plaintiff experienced a period of disability exceeding 12 months. *See Pena v. Barnhart,* 2002 WL 31487903, *11 (S.D.N.Y. 2002):

> "In determining whether Plaintiff is entitled to disability benefits, it is also necessary to consider every period during which Plaintiff may have been disabled. . . . Under the circumstances, the ALJ should have considered not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any *closed, continuous period* of not less than 12 months, following the date of his claim."

*See also* 42 U.S.C. § 1382c(a)(3)(A), 42 U.S.C. § 423(d)(1)(A).

As early as July, 2000, a treating physician found that Plaintiff's hip condition provided grounds for a disability claim (Tr. 81-82). July, 2004, treating notes indicate that Plaintiff experienced wrist pain with an "extremely painful ROM," atrophy of the hand muscles, and "pain with movement of [the] right hip" (Tr. 86). In November, 2004, Dr. Awerbuch, treating Plaintiff for CTS, also observed that "severe arthritis" of the right hip curtailed Plaintiff's functional abilities (Tr. 85). November, 2005, treating notes show that Plaintiff demonstrated "pain and trouble standing and walking" as a result of the right hip condition (Tr. 137).

Treating notes created subsequent to the successful March, 2006 hip replacement procedure also indicate that Plaintiff was at least temporarily unable to perform the demands of even a limited range of light work. While Dr. Weir notes from the month following surgery show "excellent" progress, subsequent treating notes indicate that Plaintiff would have been unable perform light work for several months. For example, Dr. Awerbuch, observing that Plaintiff required the use of crutches in the month following hip surgery, noted that the resulting wrist and hand overuse had created visible swelling, standing at odds with the ALJ's finding that Plaintiff could either write or data input on an *occasional* (up to one third of the workday) basis (Tr. 136). While treating notes from August, 2006 indicate that Plaintiff could now "stand without a cane," he presumably used the ambulatory device for walking (Tr. 135). Treating source observations that Plaintiff used a cane five months subsequent to surgery stands at odds with the finding that he was capable of either standing or walking for six hours in an eight-hour workday (Tr. 16 *citing the Residual Functional Capacity Assessment* 101, 135).

The ALJ's failure to consider whether Plaintiff was disabled for at least a closed period is in part attributable to his admitted reliance on the June, 2005 Residual Functional Capacity Assessment.[4] While the ALJ's reliance on this Assessment is not intrinsically improper, the June, 2005 findings predate the hip replacement surgery by several months, and thus do not reflect limitations in the months leading up to and following the March, 2006

---

[4]The ALJ concluded his Residual Functional Capacity finding by noting explicitly that his own assessment "was supported" by the June, 2005 Assessment (Tr. 16).

hip surgery.  *See Sayles v. Barnhart,* 2004 WL 3008739, *23 (N.D.Ill. 2004)(finding error in the ALJ's use of "outdated and inadequate" evidence).  *See also Rivera v. Barnhart,* 379 F.Supp.2d 599, 607 (S.D.N.Y.,2005)(Remand ordered based on the need for more recent information for the "clarification of discrepancies" between older records by both treating and state-hired physicians);*Olheiser v. Apfel,*  2000 WL 33340310, *4  (D.N.D. 2000) (Criticizing the ALJ's almost exclusive reliance on outdated records).  Likewise here, the rejection of more current treating source opinion in favor of the Assessment predating Plaintiff's hip surgery requires a remand for further fact-finding, including a determination of whether he is entitled to a closed period of benefits, and if so, for what period of time.[5]

In closing, I note that the errors discussed above, while critical, do not suggest that Plaintiff is automatically entitled to benefits.  *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).  Further, I find although the hospital records submitted subsequent to the administrative decision appear to be cumulative, upon remand, the ALJ may amend the record to include the later submissions.  *Id.* at 175.  Consistent with this Court's findings, I recommend that this case be remanded under Sentence Four of 42

---

[5]

In the present case, whether Plaintiff, 53 at the time of the hearing, could perform light work is critical since a finding that he was unable to perform any past relevant work, coupled with a finding that he could perform only sedentary work would direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [] for only sedentary work, § 201.09, but not if his RFC is light. § 202.10."  *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986); *see also Scales v. Commissioner of Social Sec.*, 1996 WL 343533, *2 (6th Cir. 1996).

U.S.C. §405(g) directing the ALJ to consider whether Plaintiff is eligible for a closed period of benefits.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED, and Plaintiff's Motion for Summary Judgment GRANTED to the extent that the case is remanded to the administrative level for determination of whether Plaintiff is entitled to a closed period of benefits.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20)

pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

          s/R. Steven Whalen
          **R. STEVEN WHALEN**
          **UNITED STATES MAGISTRATE JUDGE**

**Dated: July 14, 2009**

### CERTIFICATE OF SERVICE

**The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 14, 2009.**

          s/Susan Jefferson
          **Case Manager**